IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

HOLLIS DEVIN MARTZ     PLAINTIFF

v.     Civil No. 4:18-cv-04040

SHERIFF BENNY SIMMONS,
Sevier County, Arkansas; and
DEPUTY KRIS HUNDLEY     DEFENDANTS

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendants' Motion for Summary Judgment. (ECF No. 19). Plaintiff filed his Response on February 8, 2019. (ECF No. 24). Defendants filed a Reply (ECF No. 26) and two supplements (ECF Nos. 28, 30, 33). The Court finds this matter is ripe for consideration.

### I. BACKGROUND

This is a civil rights action filed by Plaintiff pursuant to 42 U.S.C. § 1983. Plaintiff proceeds *pro se* and *in forma pauperis*. Plaintiff is incarcerated in the Pine Bluff Unit of the Arkansas Department of Correction ("ADC"). Plaintiff has named Sevier County Sheriff Benny Simmons and Deputy Kris Hundley as Defendants.

On April 27, 2016, Sevier County Deputies were dispatched to the residence of Thomas and Christina Martz at 9:02 p.m., following a 911 call reporting that Plaintiff was shooting a gun and being disorderly. (ECF No. 21-2 at 5-6). A Remington 870 Express shotgun was found in a vehicle in front of the residence. (*Id*. at 5). Two spent shell casings were found and a vehicle had been damaged by a shotgun blast. (*Id.*). Plaintiff could not be located and the officers left the scene. (*Id.*). At approximately 12:30 a.m., Trudy Martz contacted the Sheriff's Office again and reported that Plaintiff was back in her yard. (*Id.*). Deputies, including Kris Hundley, were dispatched and Plaintiff was taken to the ground, handcuffed, and placed under arrest. (*Id.*).

On April 27, 2016, Deputy Michael Barnes completed a probable cause affidavit for Plaintiff's arrest. (ECF No. 21-2 at 16-18). The probable cause affidavit outlines Plaintiff's

conduct and notes that he was on "[p]robation with the Arkansas Department of Corrections for Aggravated Assault." (*Id.* at 17). On April 28, 2016, a judge found probable cause existed for the issuance of an arrest warrant. (*Id.* at 19). A notation was made that bond would be set at the first appearance. (*Id.*). Plaintiff was booked into the Sevier County Detention Center ("SCDC") on April 28, 2016, and charged with criminal mischief in the first degree, possession of firearms by certain persons, aggravated assault with a deadly weapon, and terroristic threatening. (ECF No. 21-2 at 22). On May 1 and 6, 2016, Plaintiff submitted grievances claiming that he was placed under arrest without a warrant, without any "paperwork," and without any legal charges. (ECF No. 21-3 at 2-3).

It is the policy of the SCDC that "detainees are responsible for informing detention facility staff of their needs, and of problems they are experiencing. They must utilize the written sick call and grievance procedures if necessary." (ECF No. 21-1 at 2). Further, "[a]ny inmate shall be allowed to file a grievance at such time as the inmate believes that he/she has been subjected to abuse, harassment, abridgement of civil rights or denied privileges specified in the posted rules." (ECF No. 21-4 at 4). The SCDC has no written policy regarding first appearance hearings. (ECF No. 30-1). According to Jail Administrator Chris Wolcott, "Former Sheriff Benny Simmons had no personal involvement in arranging for the Plaintiff's first appearance hearings on the criminal charges made against him in Sevier County." (*Id.*).

Plaintiff's first appearance was held on May 12, 2016. (ECF No. 21-2 at 23). On June 10, 2016, Plaintiff was transported to the ADC. (ECF No. 21-2 at 25). Thereafter, he was booked back into the SCDC on several occasions not having to do with the issues currently before the Court. (*Id.* at 27-40).

Plaintiff's criminal trial was held on March 14-15, 2018. (ECF No. 1-1 at 2). Plaintiff was found guilty of possession of a firearm by a certain person and sentenced to a term of imprisonment of 144 months in the ADC. (ECF No. 28-1 at 1 & 3). This charge had been severed from the other

pending charges. (*Id.* at 3). Plaintiff received jail time credit for the thirty-three days he was incarcerated in the SCDC in 2016. (*Id*). At the time judgment was entered on March 28, 2018, the other charges remained pending. (*Id*).

In the instant case, Plaintiff alleges that his civil rights were violated when he was arrested on April 28, 2016, and during his subsequent detention in the Sevier County Detention Center ("SCDC"). Specifically, Plaintiff contends he was: (1) arrested without probable cause, (2) subjected to the use of false statements in connection with his criminal prosecution, (3) subjected to an illegal seizure of his firearm, (4) subjected to a violation of the speedy trial act, (5) not given *Miranda* warnings, and (6) detained fifteen days before his first appearance on May 12, 2016.[1] Plaintiff sues Defendants in their individual and official capacities.

## II. LEGAL STANDARD

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, the record "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); Fed. R. Civ. P. 56(c). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *Nat'l Bank of Comm. v. Dow Chem. Co.*, 165 F.3d 602, 607 (8th Cir. 1999).

The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "They must show there is sufficient evidence to support a jury verdict in their favor." *Nat'l Bank*, 165 F.3d at 607 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). "A case founded on speculation or suspicion is

---

[1] Plaintiff refers to a claim for denial of access to the law library in his summary judgment response. This claim was not asserted in the Complaint and will not be addressed

3

insufficient to survive a motion for summary judgment." *Id.* (citing *Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)).

## III. DISCUSSION

Defendants contend they are entitled to summary judgment for the following reasons: (1) there is no proof of any personal involvement by Defendants; (2) Plaintiff's constitutional rights were not violated by his first appearance hearing; (3) Plaintiff's allegations are barred as a collateral attack on his conviction under *Heck v. Humphrey*, 512 U.S. 477 (1994) and/or because collateral estoppel applies; (4) Defendants are entitled to qualified immunity; and (5) there is no basis for official capacity liability.

### A. Arrest without Probable Cause, False Statements, and Illegal Seizure

Plaintiff's claim that he was arrested without probable cause is not cognizable. In *Heck v. Humphrey*, the Supreme Court held that a claim for damages for "allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid" is not cognizable until "the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus." 512 U.S. 477, 486-87. A finding that Plaintiff was arrested without probable cause would necessarily imply the invalidity of his conviction. *See, e.g*, *Sanders v. Fayetteville City Police Dep't*, 160 Fed. App'x. 542, 543 (8th Cir. 2005) (citing *Smithart v. Towery*, 79 F.3d 951, 952 (9th Cir. 1996) (allegations that the defendants lacked probable cause to arrest the plaintiff and brought unfounded criminal charges challenged validity of conviction and were *Heck*-barred)). To the extent Plaintiff is asserting his firearm was illegally seized and the speedy trial act was violated, these claims too are not cognizable under *Heck*.[2] Similarly, his claim

---

[2] Collateral estoppel may also apply. Collateral estoppel applies when a Plaintiff seeks to use a section 1983 action to relitigate in federal court issues that were decided against him in a state criminal proceeding. *Allen v. McCurry*,

4

that Deputy Hundley made false statements and/or fabricated reports are barred by *Heck*. *See, e.g.*, *Young v. Bullock*, No. 1:18-cv-102, 2019 WL 354874, at *3 (E.D. Mo. Jan. 29, 2019). Moreover, Plaintiff's conviction of the underlying offense of possession of a firearm by a certain person conclusively determines that probable cause existed for his arrest. *Malady v. Crunk*, 902 F.2d 10, 11 (8th Cir. 1990) (conviction of underlying offense is complete defense to a civil rights action asserting arrest was without probable cause).[3]

Accordingly, Defendants are entitled to summary judgment on these claims.

**B. Miranda Warnings**

The claims based on Defendants' alleged failure to read Plaintiff his *Miranda*[4] warnings fail as a matter of law. The Constitution does not require the giving of *Miranda* warnings. *See, e.g.*, *Chavez v. Martinez*, 538 U.S. 760 (2003). In *United States v. Patane*, the Supreme Court noted that "[o]ur cases . . . make clear . . . that a mere failure to give *Miranda* warnings does not, by itself, violate a suspect's constitutional rights or even the *Miranda* rule. . . . [T]he nature of the right protected by the Self-Incrimination Clause, which the *Miranda* rule, in turn, protects . . . is a fundamental *trial* right." 542 U.S. 630, 641 (2004) (internal quotation marks and citations omitted) (emphasis in original). If statements obtained during custodial interrogation are not used against the party, there is no constitutional violation. *Davis v. City of Charleston*, 827 F.2d 317, 322 (8th Cir. 1987). Plaintiff does not argue that any statements obtained from him during custodial interrogation were used against him.

Accordingly, Defendants are entitled to summary judgment on this claim.

---

449 U.S. 90, 103 (1980); *Simmons v. O'Brien*, 77 F.3d 1093, 1097 (8th Cir. 1996) ("When a federal constitutional issue is previously decided in a state criminal proceeding following a full and fair hearing, issue preclusion will therefore bar relitigation of that issue in a § 1983 action"). However, the Court has insufficient information regarding the state criminal proceedings to determine whether collateral estoppel applies and so expresses no opinion as to that issue.

[3] The Court also notes that the probable cause determination was made without delay on April 28, 2016. *See Cnty. of Riverside v. McLaughlin*, 500 U.S. 44, 56-57 (1991) (noting judicial probable cause determination should generally be made within 48 hours of the warrantless arrest).

[4] *Miranda v. Arizona*, 384 U.S. 436 (1966).

### C. First Appearance

The Due Process Clause of the Fourteenth Amendment controls the issue of a pretrial detainee's right to a prompt appearance in court after arrest. *See Hayes v. Faulkner Cnty.*, 388 F.3d 669, 673 (8th Cir. 2004). In *Hayes*, the Court of Appeals for the Eighth Circuit applied the framework set forth by the Seventh Circuit in *Armstrong v. Squadrito*, 152 F.3d 564 (7th Cir. 1998), in determining whether an extended detention following an arrest violated the Due Process Clause. Applying this framework, the *Hayes* court considered the following three questions: (1) whether the Due Process Clause prohibits an extended detention, without an initial appearance, following arrest by a valid warrant; (2) whether a defendant's conduct offends the standards of substantive due process; and (3) whether the totality of the circumstances shocks the conscience. *Hayes*, 388 F.3d at 673; *see also Luckes v. Cnty. of Hennepin*, 415 F.3d 936 (8th Cir. 2005). The Court will examine each in turn.

#### 1. Extended Detention

In this case, Plaintiff was arrested without a warrant. A probable cause determination was made later that same day. This probable cause determination satisfies the Fourth Amendment requirements for a prompt judicial determination of probable cause following a warrantless arrest. *See Gerstein v. Pugh*, 420 U.S. 103, 124-25 (1975). The determination can be made without a personal appearance by the arrestee. *See, e.g.*, *Jones v. City of Santa Monica*, 383 F.3d 1052, 1055-56 (9th Cir. 2004); *Green v. Byrd*, 358 F. Supp. 3d 782, 793-95 (E.D. Ark. 2018). This determination serves to judicially approve the arrest without a warrant and places the arrest on the same footing as one made pursuant to a warrant. *See Tilson v. Forrest City Police Dep't.*, 28 F.3d 802, 815 n.10 (8th Cir. 1994).

In *Hayes*, the Eighth Circuit, in addressing the first question—whether the Due Process Clause prohibits an extended detention, without an initial appearance, following arrest by a valid warrant—concluded that the "Due Process Clause forbids an extended detention, without a first

appearance, following [an] arrest by warrant." *Hayes*, 388 F.3d at 673. It is undisputed in this case that Plaintiff was arrested on April 28, 2016, and did not appear before a judge until May 12, 2016. The probable cause determination made in this case did not constitute a first appearance within the meaning of Arkansas Rules of Criminal Procedure 8.1 and 8.3. Rule 8.1 requires a detainee, who has not been released on citation or other lawful manner, be taken "before a judicial officer without unnecessary delay." Ark. R. Crim. P. 8.1. Rule 8.3 requires that the detainee be informed of the charges against him; that he is not required to say anything and that anything he says can be used against him; that he has the right to counsel; and that he has a right to communicate with his counsel, family, or friends, and that reasonable means will be provided for him to do so. Ark. R. Crim. P. 8.3(a). Further, Rule 8.3 provides that after the arrested person has an opportunity to confer with counsel, the judicial officer may proceed with the pretrial release inquiry. *Id.* at 8.3(b).

The probable cause determination made the day of Plaintiff's arrest did not accord him the adversary safeguards afforded at the first appearance. In *Gerstein*, the Supreme Court noted that "[t]he consequences of prolonged detention may be more serious than the interference occasioned by arrest. Pretrial confinement may imperil the suspect's job, interrupt his source of income, and impair his family relationships." *Gerstein*, 420 U.S. at 114.

Accordingly, the Court finds that the undisputed record indicates Plaintiff was subjected to an extended detention.

**2. Standards of Substantive Due Process**

Second, the court must consider "whether the defendants' conduct offends the standards of substantive due process." *Hayes*, 388 F.3d at 674. In this regard, the *Hayes* court noted that "'liability for deliberate indifference to inmate welfare rests upon the luxury enjoyed by prison officials of having time to make unhurried judgments, upon the chance for repeated reflection, largely uncomplicated by the pulls of competing obligations.'" *Id.* (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 853 (1998)). The *Hayes* court noted that in *Coleman v. Frantz*, 754 F.2d

7

719, 723-24 (7th Cir. 1985), the Seventh Circuit determined that the plaintiff's "18-day detention after arrest by warrant, but before initial appearance, violated [his] substantive due process rights." *Hayes*, 388 F.3d at 673. For the reasons discussed below, the Court finds that Defendant Sheriff Simmons' conduct offends the standards of substantive due process.

In this case, Plaintiff has sued Defendants in both their individual and official capacities. To be held individually liable under section 1983, a defendant must, through his own actions, have violated the Constitution. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). A defendant in a section 1983 suit cannot be held vicariously liable for the acts of another. *Parrish v. Ball*, 594 F.3d 993, 1001 (8th Cir. 2010).

### a. Individual Capacity Claim against Deputy Hundley

Here, the only connection Deputy Hundley had with Plaintiff was that he was one of the deputies present when Plaintiff was arrested. Nothing in the record suggests he had any role in Plaintiff's continued detention or in scheduling or monitoring first appearances.

Accordingly, there is no basis for individual liability against Deputy Hundley and the issue of whether he is entitled to qualified immunity need not be addressed.[5]

### b. Individual Capacity Claim against Sheriff Simmons

With respect to Sheriff Simmons, there is nothing in the summary judgment record indicating he was aware of Plaintiff's arrest or detention. There is simply no evidence of any direct participation in the alleged constitutional violations on his part. However, Plaintiff contends Sheriff Simmons is liable based on his failure to properly train or supervise SCDC staff. A supervisor can be held liable if his failure to train or supervise the offending actor caused the

---

[5] Qualified immunity analysis need only be performed when there is a basis for individual liability. *See, e.g.*, *Parrish*, 594 F.3d at 1001 (qualified immunity shields government officials from liability in their individual capacities).

constitutional deprivation. *Audio Odyssey, Ltd. v. Brenton First Nat'l Bank*, 245 F.3d 721, 742 (8th Cir. 2001).

In *Parrish*, the Eighth Circuit set forth the requirements for liability for failure to supervise. 594 F.3d at 1002. Under *Parrish*, in order for Plaintiff to establish Sheriff Simmons' liability as a supervisor, he must show Sheriff Simmons: "1) Received notice of a pattern of unconstitutional acts committed by subordinates; 2) Demonstrated deliberate indifference or tacit authorization of the offensive acts; 3) Failed to take sufficient remedial action; and 4) That such failure proximately caused [his] injury[.]" *Id.* (citations omitted). Here, "there is no showing of previous illegalities that place Sheriff [Simmons] on the requisite notice." *Audio*, 245 F.3d at 742. Therefore, Sheriff Simmons is not liable based on a failure to supervise theory.

A supervisor may also be held liable for a failure to train an inferior officer "where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact. In such a situation, a plaintiff must also prove that the alleged failure to train 'actually caused' the constitutional deprivation." *Parrish*, 594 F.3d at 1002. As can be seen from *Hayes* and other cases discussed herein, a reasonable supervisor would have known that his failure to train jail personnel on the issue of when first appearances should occur and on whether the jail had authority for an extended detention of a detainee would likely result in the violation of detainees' substantive due process rights. *Hayes*, 388 F.3d at 673-74. In the case at bar, the summary judgment record adequately supports the existence of a nexus between the failure to train and the constitutional violation. Accordingly, the Court finds that there is a basis for Plaintiff's individual capacity claim against Sheriff Simmons.

However, Sheriff Simmons may avoid individual capacity liability if he is entitled to qualified immunity. "Determining whether a defendant is entitled to qualified immunity requires a two-step inquiry. *Jones v. McNeese*, 675 F.3d 1158, 1161 (8th Cir. 2012). First, the Court must

determine whether Plaintiff has alleged a deprivation of a constitutional right. *Cox v. Sugg*, 484 F.3d 1062, 1065 (8th Cir. 2007). If so, the Court must decide whether the implicated right was clearly established at the time of the deprivation. *Jones*, 675 F.3d at 1161 (citing *Parrish*, 594 F.3d at 1001). "Clearly established" means "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id*. (quoting *Anderson v. Creighton*, 483 U.S. 635, 640, (1987)). For a right to be clearly established, "existing precedent must have placed the statutory or constitutional question beyond debate." *Smith v. City of Minneapolis*, 754 F.3d 541, 546 (8th Cir. 2014) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)). "If no reasonable fact finder could answer yes to both of these questions, the official is entitled to qualified immunity." *Nance v. Sammis*, 586 F.3d 604, 609 (8th Cir. 2009) (citation omitted).

Turning to the first prong of the qualified immunity inquiry, the Court finds that Plaintiff has alleged a deprivation of a constitutional right. For the reasons discussed above, the Court has concluded that the facts, viewed in the light most favorable to Plaintiff, demonstrate that Sheriff Simmons' conduct offends the standards of substantive due process.

As noted above, the second prong of the qualified immunity inquiry asks whether the law regarding substantive due process in connection with extended detentions was clearly established in 2016. As can be seen from *Hayes*, 388 F.3d at 673-74, and the other cases cited above, the law was clearly established by 2016 that a county sheriff had a duty to train jail personnel that they must monitor whether detainees were taken for a first appearance and whether the jail had the right to hold a detainee for an extended period of time.

Accordingly, as Plaintiff has alleged a deprivation of a constitutional right and that right was clearly established at the time of the alleged deprivation, the Court finds that Sheriff Simmons is not entitled to qualified immunity.

### c. Official Capacity Claims

Claims against Sheriff Simmons[6] in his official capacity are the equivalent of a suit against Sevier County. *See, e.g.*, *Roberts v. Dillon*, 15 F.3d 113, 115 (8th Cir. 1994) ("An official-capacity suit is merely another way of pleading an action directly against the public entity itself"). "[T]o sustain the action against Sheriff [Simmons] in his official capacity, [Plaintiff] must prove that the county 'itself caused the constitutional violation at issue.'" *Parrish*, 594 F.3d at 997 (citation omitted).

Specifically, Plaintiff "must show that his constitutional injury was caused by a policy or custom of the [county], the implementation of which amounted to deliberate indifference to his constitutional rights." *Lund v. Hennepin Cnty.*, 427 F.3d 1123, 1125 (8th Cir. 2005) (citations omitted). "A policy is deliberately indifferent to a person's constitutional rights when its inadequacy is both obvious and likely to result in the alleged deprivation of constitutional rights." *Russell v. Hennepin Cnty.*, 420 F.3d 841, 847 (8th Cir. 2005).

In *Hayes*, the plaintiff argued the county policy was to submit names of detainees to the court and then wait for the court to schedule a hearing. *Hayes*, 388 F.3d at 674. The Eighth Circuit noted that *Oviatt v. Pearce*, 954 F.2d 1470, 1478 (9th Cir. 1992), found a policy was deliberately indifferent where the jail had no internal procedures to track whether inmates had been arraigned. *Hayes*, 388 F.3d at 674. Further, the Eighth Circuit noted the court in *Armstrong*, 152 F.3d at 578-79, had stated "[a] policy that ignores whether the jail has the authority for long-term confinement seems to be a policy of deliberate indifference." *Hayes*, 388 F.3d at 674. The *Hayes* court held that "[b]ecause the County's policy . . . attempts to delegate the responsibility of bringing detainees

---

[6] An official capacity claim was also asserted against Deputy Hundley. However, it is appropriate to dismiss that claim as duplicative or redundant because the claim is also asserted against Sheriff Simmons. *Veatch v. Bartels Lutheran Home*, 627 F.3d 1254, 1257 (8th Cir. 2010) (citation omitted). Accordingly, the official capacity claim against Deputy Hundley should be dismissed as duplicative and will not be discussed further.

to court for a first appearance and ignores the jail's authority for long-term confinement, the policy is deliberately indifferent to detainees' due process rights." *Id.*

In the case at bar, Sevier County not only had no written policy regarding first appearances, it required the detainees to bring any problems involving violations of their civil rights to the attention of the jail staff. Plaintiff did so in this case, but Defendants took no action in response to his grievances. While Plaintiff's grievances did not specifically use the words "first appearance," it was clear he was objecting to his detention since his grievances claimed that he was placed under arrest without a warrant, without any "paperwork," and without any legal charges. (ECF No. 21-3 at 2-3). Thus, the Court concludes that Plaintiff has adequately supported his claim that the County's "policy"—its failure to adopt adequate safeguards or provide training—was the product of deliberate indifference to the constitutional rights of detainees. No internal safeguards were put in place, no procedures were developed to ensure that the first appearances in fact occurred, no follow-up was done, and no steps were taken to ensure that the detention center in fact had the authority to continue to detain arrested individuals. The inadequacy of this policy appears to be both obvious and likely to result in the deprivation of constitutional rights. *See, e.g.*, *Armstrong*, 152 F.3d at 578-79 ("[J]ailers hold not only the keys to the jail cell, but also the knowledge of who sits in the jail and how long they have sat there. They are the ones directly depriving detainees of liberty.").

Accordingly, the Court finds that Sheriff Simmons is not entitled to summary judgment on Plaintiff's official capacity claim.

### 3. Conduct that Shocks the Conscience

The "third and final step in this substantive due process analysis is determining whether, in the totality of the circumstances, the defendants' conduct in depriving the [plaintiff] of a constitutional right shocks the conscience. This is a question of law." *Hayes*, 388 F.3d at 675 (citations omitted). Deliberately indifferent conduct may not always shock the conscience. *Id.*

As the Supreme Court has noted, "[d]eliberate indifference that shocks the conscience in one environment may not be so patently egregious in another, and our concern with preserving the constitutional proportions of substantive due process demands an exact analysis of circumstances before any abuse of power is condemned as conscience-shocking." *Cnty of Sacramento*, 523 U.S. at 850.

The Eighth Circuit in *Hayes* stated that "in the totality of the circumstances in this case, the key is Arkansas Rule of Criminal Procedure 8.1 that makes a prompt judicial appearance mandatory." *Hayes*, 388 F.3d at 675. The Eighth Circuit concluded that "[t]he County's and Kelley's failure to take Hayes before a judge for 38 days [for a first appearance] shocks the conscience." *Id.*; s*ee also Armstrong*, 152 F.3d at 581-82 (shocks the conscience when inmate held for fifty-seven days without first appearance despite his repeated inquiries); *Coleman v. Frantz*, 754 F.2d 719, 723-24 (7th Cir. 1985) (eighteen day detention without a first appearance shocks the conscience); *Scott v. Denzer*, No. 06-cv-5202, 2008 WL 2945584, at *7 (W.D. Ark. July 28, 2008) (stating "failure to take Scott before the judge for seventeen days following the first arrest and thirty-one days following the second arrest shocks the conscience"). *But see Luckes*, 415 F.3d at 940 (twenty-four hour detention before first appearance does not shock the conscience); *Alexander v. City of Muscle Shoals*, 766 F. Supp. 2d 1214, 1234 (N.D. Ala. 2011) (nine day detention between arrest and time brought before a judge was not so severe as to shock the conscience); *Head v. United States*, No. 07-3555, 2010 WL 908034, at *10 (D. Minn. March 9, 2010) (stating "four-day detention was not an extended detention, nor does it shock the conscience"); *Sanchez v. Campbell*, No. 4:09-cv-420, 2010 WL 547620, at *3 (N.D. Fla. Feb. 10, 2010) (five day detention prior to first appearance does not violate the Fourteenth Amendment); *Afeworki v. Thompson*, No. C06-628, 2007 WL 2572293, at *3-5 (W.D. Wash. Sept. 5, 2007) (seventeen day delay did not amount to a due process violation); *London v. Dorney*, No. 07-2087, 2009 WL 903392, at *4 (W.D. Ark. Apr. 1, 2009) (three day delay in first appearance did not

shock the conscience); *Pledger v. Reece*, No. 04-3084, 2005 WL 3783428, at *4 (W.D. Ark. Nov. 10, 2005) (fifteen day delay before first appearance did not shock the conscience where county policy provided any new inmates must be brought before a judge within seventy-two hours and sheriff immediately ordered Pledger released when he was notified of the extended detention).

In light of the caselaw on this subject, the Court finds that a fifteen day detention before a first appearance, in conjunction with the showing Plaintiff has made and the grievances he filed, shocks the conscience.

Accordingly, Defendant are not entitled to summary judgment on this claim.

### D. Entitlement to Damages

Defendants next argue that Plaintiff is not entitled to damages because he was given credit on his sentence for each day he was confined in Sevier County. Defendants' correctly point out that Plaintiff's sentence was shortened by the days he spent detained prior to his first appearance. Perhaps more importantly, the provisions of 42 U.S.C. § 1997e(e) bar a prisoner's recovery for mental or emotional damages in the absence of a physical injury. Here, Plaintiff has made no allegation he suffered physical injury because of his detention. Thus, Plaintiff may not recover for mental or emotional damages related to his substantive due process claim. Plaintiff, however, may be entitled to an award of nominal and/or punitive damages against Sheriff Simmons. *Royal v. Kautzky*, 375 F.3d 720, 723-24 (8th Cir. 2004) (observing that in cases where no physical injury exists, the inmate is still free to seek nominal and punitive damages). That being said, this issue is not presently before the Court and, accordingly, the Court will not decide it at this time.

## IV. CONCLUSION

For the reasons stated, Defendants' Motion for Summary Judgment (ECF No. 19) should be and hereby is **GRANTED IN PART** and **DENIED IN PART**. Specifically, the Motion is **GRANTED** with respect to the following claims:

(1) Plaintiff's claims that he was arrested without probable cause, that false statements were made during his criminal case, and that an illegal seizure occurred. Plaintiff may not pursue these claims until his conviction has been reversed, set aside, or otherwise called into question. Accordingly, these claims are **DISMISSED WITHOUT PREJUDICE**;

(2) Plaintiff's claim that he was not given *Miranda* warnings is **DISMISSED WITH PREJUDICE**; and

(3) All claims against Deputy Hundley are **DISMISSED WITH PREJUDICE**.

The Motion is **DENIED** with respect to:

(1) Plaintiff's individual and official capacity claims against Sheriff Simmons that his extended detention without a first appearance violates his substantive due process rights.

Sheriff Simmons is advised that the Court believes it may be appropriate to grant Plaintiff summary judgment on this remaining claim. Sheriff Simmons is given until **May 29, 2019**, to file a response on this issue. Plaintiff may also file any further argument or documentation he wishes by **May 29, 2019**.

**IT IS SO ORDERED**, this 14th day of May, 2019.

/s/ Susan O. Hickey
Susan O. Hickey
Chief United States District Judge