IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

HOLLIS DEVIN MARTZ                                                                       PLAINTIFF

v.                                  Civil No. 4:18-cv-04040

SHERIFF BENNY SIMMONS,                                                                   DEFENDANT
Sevier County, Arkansas

## MEMORANDUM OPINION

On May 14, 2019, the Court entered a Memorandum Opinion and Order (ECF No. 34) granting in part and denying in part Defendants' Motion for Summary Judgment (ECF No. 19). Specifically, the motion (ECF No. 19) was denied as to Plaintiff's individual and official capacity claims against Sheriff Simmons for allegedly violating Plaintiff's substantive due process rights when Sheriff Simmons extended Plaintiff's detention without a first appearance. The Court advised Sheriff Simmons that it might be appropriate to grant Plaintiff summary judgment on these claims. Sheriff Simmons was given until May 29, 2019, to file a response on this issue. (ECF No. 34, p. 15). Plaintiff was also given until May 29, 2019, to file any further argument or documentation he wished for the Court to consider. (*Id.*). Sheriff Simmons filed a response (ECF No. 35) contending he that he remains entitled to summary judgment. (ECF No. 35). Plaintiff has filed objections to the response. (ECF No. 36). The Court finds this matter is ripe for consideration.

## BACKGROUND

This is a civil rights action filed by Plaintiff pursuant to 42 U.S.C. § 1983. Plaintiff proceeds *pro se* and *in forma pauperis*. Plaintiff is incarcerated in the Randall L. Williams Unit of the Arkansas Department of Correction ("ADC").

Plaintiff was booked into the Sevier County Detention Center ("SCDC") on April 28, 2016, and charged with criminal mischief in the first degree, possession of firearms by certain persons,

aggravated assault with a deadly weapon, and terroristic threatening. (ECF No. 21-2, p. 22). On May 1 and 6, 2016, Plaintiff submitted grievances claiming that he was placed under arrest without a warrant, without any "paperwork," and without any legal charges. (ECF No. 21-3, pp. 2-3).

Plaintiff's first appearance was held on May 12, 2016. (ECF No. 21-2, p. 23). On June 10, 2016, Plaintiff was transported to the ADC. (ECF No. 21-2, p. 25).

Plaintiff's criminal trial was held on March 14-15, 2018. (ECF No. 1-1, p. 2). Plaintiff was found guilty of possession of a firearm by a certain person and sentenced to a term of imprisonment of 144 months in the ADC. (ECF No. 28-1, pp. 1, 3). This charge had been severed from the other pending charges. (*Id.* at 3). Plaintiff received jail time credit for the thirty-three days he was incarcerated in the SCDC in 2016. (*Id.*). At the time judgment was entered on March 28, 2018, the other charges remained pending.[1] (*Id.*).

## LEGAL STANDARD

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, the record "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); Fed. R. Civ. P. 56(c). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *Nat'l Bank of Comm. v. Dow Chem. Co.*, 165 F.3d 602, 607 (8th Cir. 1999).

The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "They must show there is sufficient evidence to support a jury verdict in their favor." *Nat'l Bank*, 165 F.3d at 607 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). "A case founded on speculation or suspicion is

---

[1] A more detailed background is contained in the Court's Memorandum Opinion and Order. (ECF No. 34).

insufficient to survive a motion for summary judgment." *Id.* (citing *Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)).

## DISCUSSION

The Due Process Clause of the Fourteenth Amendment controls the issue of a pretrial detainee's right to a prompt appearance in court after arrest. *See Hayes v. Faulkner Cnty.*, 388 F.3d 669, 673 (8th Cir. 2004). In *Hayes*, the Court of Appeals for the Eighth Circuit applied the framework set forth by the Seventh Circuit in *Armstrong v. Squadrito*, 152 F.3d 564 (7th Cir. 1998), in determining whether an extended detention following an arrest violated the Due Process Clause. Applying this framework, the *Hayes* court considered the following three questions: (1) whether the Due Process Clause prohibits an extended detention, without an initial appearance, following arrest by a valid warrant; (2) whether a defendant's conduct offends the standards of substantive due process; and (3) whether the totality of the circumstances shocks the conscience. *Hayes*, 388 F.3d at 673.

### I. The Original Summary Judgment Motion

In their Summary Judgment Motion and supporting documents (ECF Nos. 19-21, 30), Defendants presented the following information regarding the handling of first appearances: (1) the SCDC had no written policy regarding first appearance hearings; and (2) according to Jail Administrator Chris Wolcott, "Former Sheriff Benny Simmons had no personal involvement in arranging for the Plaintiff's first appearance hearings on the criminal charges made against him in Sevier County."

Defendants presented no other evidence regarding any training that was done with respect to the timing of first appearances, or any internal safeguards, or procedures to ensure that the first appearances did in fact occur, or any steps taken to ensure the detention center had the authority to continue to detain arrested individuals. In view of this lack of evidence, the Court concluded that due to the failure to adopt adequate safeguards or provide training, it appeared both obvious

and likely to result in the deprivation of constitutional rights. The Court further concluded that a fifteen-day detention before a first appearance, in conjunction with the showing Plaintiff had made, and the grievances he filed, shocked the conscience.

**II. Sheriff Simmons' Supplement**

In Sheriff Simmons' supplement (ECF No. 35), he presents for the first time his affidavit describing the training he provided to Administrator Wolcott and another affidavit[2] from Administrator Wolcott setting forth his efforts to obtain an earlier first appearance for Plaintiff. Sheriff Simmons seeks to excuse his failure to provide this evidence previously on the grounds that "counsel thought that the case law—which has never found a delay of 15 days or less conscience-shocking prior to the Court's Order in this case—would entitle the Defendants to qualified immunity . . . rendering arguments about necessity [of the delay] superfluous." (ECF No. 35, p. 2 n.1).

The applicable case law does not support counsel's belief that there is a bright-line rule that delineates when a detention amounts to an extended detention which shocks the conscience within the meaning of the Due Process Clause. While longer periods of detention without a first appearance appear to be the norm in cases finding that an extended detention shocks the conscience, there is support in the case law for the conclusion that shorter periods of detention may indeed shock the conscience. *See, e.g.*, *Curtis v. White*, No. 2:09-cv-00097, 2010 WL 5625668 (E.D. Ark. Dec. 17, 2018) (finding due process violated by detention of ten days before a first appearance); *see also Coleman v. Frantz*, 754 F.2d 719, 723-24 (7th Cir. 1985) (finding eighteen day detention without a first appearance shocks the conscience). Moreover, with respect to Rule 8.1 of the Arkansas Rules of Criminal Procedure, it has been held that detentions of three-and-a-half days without a first appearance violate this provision. *Clay v. State*, 883 S.W.2d 822, 829 (Ark. 1994). Consequently, whether substantive due process was violated depends on the

---

[2] Two affidavits were submitted with the original summary judgment motion. (ECF Nos. 21-1, 30-1).

particular facts of each case and their egregiousness—not necessarily the number of days detained. Although Plaintiff was subjected to an extended detention, that does not necessarily mean that liability follows. There has to be a determination whether under the totality of the circumstances Sheriff Simmons' conduct amounts to a violation of substantive due process and shocks the conscience.

According to Sheriff Simmons, prior to the relevant time period, he "instructed and trained" Administrator Wolcott: (1) that first appearance hearings were required for each new inmate, regardless of their reason for being in jail, and each inmate charged with a new crime while in jail; (2) that first appearance hearings were substantively different from the probable cause determination; (3) that first appearance hearings should occur without unnecessary delay, generally within 72 hours; and (4) that the Sheriff should be advised if the jail administrator needed the Sheriff's assistance on a particular hearing and/or if an inmate had gone for an extended period of time, no longer than a week, without receiving a first appearance. (ECF No. 35-1, p. 1). Sheriff Simmons also indicates he told Administrator Wolcott that he was personally responsible for coordinating and scheduling all first appearance hearings. (*Id.*).

Sheriff Simmons indicates that he was not informed of the delay in Plaintiff's first appearance. (ECF No. 35-1, p. 2). Sheriff Simmons asserts that he "did not actually know those facts until this suit was filed." (*Id.*). Further, he states he could not recall ever being sued by an inmate in relation to a delay in a first appearance. (*Id.*).

Administrator Wolcott indicates he was trained as set forth in Sheriff Simmons' affidavit and knew it was his responsibility to schedule and coordinate the first appearances. (ECF No. 35-2, p. 1). Specifically, with respect to Plaintiff, Administrator Wolcott states that:

> In the case of Hollis Devin Martz, in late April and early May of 2016, I began trying to schedule his first appearance hearing almost immediately after his intake into the jail. Unfortunately, at the time, the state district judges would not see inmates for first appearance hearing[s] and the circuit judges could not, and would not (for reasons related to the judges' schedules and availability), see Mr. Martz until his first appearance hearing on May 12, 2016.

5

(*Id.* at 2). Administrator Wolcott goes on to add that he never advised Sheriff Simmons of the scheduling difficulties with respect to Plaintiff's first appearance because there was nothing else that could be done and he did not consider the delay to be unnecessary since it was based on the availability of a judge. (*Id.*).

Based on this newly presented evidence, Sheriff Simmons argues that Plaintiff cannot establish a substantive due process violation. Sheriff Simmons also contends that he is entitled to qualified immunity. Plaintiff disagrees, arguing that if Administrator Wolcott was trained by Sheriff Simmons "they both had knowledge" about Plaintiff's first appearance. Further, Plaintiff contends Administrator Wolcott should be added as a Defendant.[3]

### A. Individual Liability

Individual liability under section 1983 must be based on personal involvement. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). "Liability under section 1983 requires a causal link to, and direct responsibility for, the deprivation of rights. To establish personal liability of the supervisory defendant, [Plaintiff] must allege specific facts of personal involvement in, or direct responsibility for, a deprivation of his constitutional rights." *Clemmons v. Armontrout*, 477 F.3d 962, 967 (8th Cir. 2007) (quoting *Mayorga v. Missouri*, 442 F.3d 1128, 1132 (8th Cir. 2006)). A defendant in a section 1983 suit cannot be held vicariously liable for the acts of another. *Parrish v. Ball*, 594 F.3d 993, 1001 (8th Cir. 2010).

Upon review, no evidence suggests Sheriff Simmons was personally involved in, or even aware of, Plaintiff's extended detention without a first appearance. Rule 8.1 requires an arrestee to be taken for a first appearance without unnecessary delay which has been interpreted to mean

---

[3] There is currently no pending motion or proposed amended pleading seeking to join Administrator Wolcott as a party to this action as required by the Federal Rules of Civil Procedure and the Local Rules. *See* Fed. R. Civ. P, 7(b); Local Rule 5.5. Moreover, the deadline to amend pleadings and join parties in this case passed on November 26, 2018. (ECF No. 17, p. 2). Therefore, the Court declines to join Administrator Wolcott as a party to this action.

within seventy-two hours. While Sheriff Simmons does not have a written policy, he asserts that his verbal training incorporated the seventy-two-hour limit. As noted above, Administrator Wolcott did not advise the Sheriff about Plaintiff's situation. Therefore, the Court finds that Sheriff Simmons cannot be held liable in his personal capacity when he did not participate in the alleged unconstitutional conduct.

However, Sheriff Simmons may still be subject to liability in his supervisory capacity if his own failure to supervise or train Administrator Wolcott resulted in the alleged constitutional violation. *Audio Odyssey, Ltd. v. Brenton First Nat'l Bank*, 245 F.3d 721, 742 (8th Cir. 2001). In order for Plaintiff to establish Sheriff Simmons' liability for failure to supervise, he must show Sheriff Simmons: "1) Received notice of a pattern of unconstitutional acts committed by subordinates; 2) Demonstrated deliberate indifference or tacit authorization of the offensive acts; 3) Failed to take sufficient remedial action; and 4) That such failure proximately caused injury to [Plaintiff]." *Parrish*, 94 F.3d at 1002.

The summary judgment record, when viewed in the light most favorable to the Plaintiff, contains "no showing of previous illegalities that place Sheriff [Simmons] on the requisite notice" of a pattern of unconstitutional acts committed by subordinates. *Audio*, 245 F.3d at 742. Therefore, the Court finds that Sheriff Simmons is not liable based on a failure to supervise theory.

A supervisor may also be held liable for a failure to train an inferior officer "where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact. In such a situation, a plaintiff must also prove that the alleged failure to train 'actually caused' the constitutional deprivation." *Parrish*, 594 F.3d at 1002. Sheriff Simmons has outlined the training given to Administrator Wolcott and Administrator Wolcott has affirmatively acknowledged having received that training. There is nothing in the summary judgment record that shows a pattern of delays in first appearances or even that there were other incidents where an extended delay occurred. *Wever v. Lincoln Cnty. Neb.*, 388 F.3d 601, 607 (8th Cir. 2004) (stating

7

that a "single incident, or a series of isolated incidents, usually provides an insufficient basis upon which to assign supervisory liability"). In the case at bar, there is no suggestion that the training was so inadequate that it actually caused the constitutional deprivation. Therefore, the Court finds that Sheriff Simmons is not liable based on a failure to train theory.

Accordingly, Sheriff Simmons is entitled to summary judgment on Plaintiffs individual capacity claims.

### B. Official Capacity Claim

Claims against individuals in their official capacities are equivalent to claims against the entity for which they work. *Hafer v. Melo*, 502 U.S. 21, 24-27 (1991). "There are two basic circumstances under which municipal liability will attach: (1) where a particular municipal policy or custom itself violates federal law, or directs an employee to do so; and (2) where a facially lawful municipal policy or custom was adopted with 'deliberate indifference' to its known or obvious consequences." *Moyle v. Anderson*, 571 F.3d 814, 817 (8th Cir. 2009) (citation omitted).

The SCDC's verbal policy does not itself violate federal law or direct an employee to do so. "A policy which does not 'affirmatively sanction' unconstitutional action, and which instead relies on the discretion of the municipality's employees, is not an unconstitutional policy." *Id.* at 818.

Because SCDC's verbal policy was:

> facially lawful and did not compel unconstitutional action, [Plaintiff has] the high burden of proving that the county's decision to maintain the policy was made with deliberate indifference to its known or obvious consequences. The standard for deliberate indifference is objective; a governmental entity is liable if it has maintained a policy in which the inadequacy is so obvious, and the inadequacy is so likely to result in the violation of constitutional rights that the policymakers can be said to have been deliberately indifferent. A showing of simple or even heightened negligence will not suffice.

*Id.* at 818-819 (internal citation and quotation omitted).

In the instant case, Plaintiff has pointed to no evidence in the summary judgment record that creates a genuine issue of fact as to whether "the county had notice of an alleged inadequacy in the [first appearance] policy or that the policy's alleged inadequacy was so patently obvious that the county should have known that a constitutional violation was inevitable." *Moyle*, 571 F.3d at 819. However, a local government may also be held liable if the failure to train or supervise the offending actor caused the deprivation. In *Parrish*, the Court set forth the requirements to establish governmental or official capacity liability based on a failure to train. *Parrish*, 594 F.3d at 997. It stated that a government may be subject to liability for inadequate training of its employees where:

> (1) the [county's] . . . training practices [were] inadequate; (2) the [county] was deliberately indifferent to the rights of others in adopting them, such that the failure to train reflects a deliberate or conscious choice by [the county] ; and (3) an alleged deficiency in the . . . training procedures actually caused the plaintiff' s injury.

*Id.* (cleaned up).

Even where it is established that only minimal training is received, "that finding alone will not satisfy a § 1983 claim for failure to train." *Parrish*, 594 F.3d at 997. Instead, Plaintiff:

> must demonstrate "that in light of the duties assigned to specific officers . . . the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the [county] can reasonably be said to have been deliberately indifferent to the need."

*Id.* at 998 (quoting *City of Canton v. Harris*, 489 U.S. 378, 390 (1989)).

Plaintiff has made no such showing. He does not identify any specific deficiency in the training given to Administrator Wolcott. Instead, he simply argues that he was detained for an extended period of time without a first appearance. The summary judgment record does not contain any evidence of a deficiency in the training or suggest a causal relationship between the failure to train and the alleged constitutional violation. The Plaintiff does not indicate there were other occasions on which Administrator Wolcott failed to promptly arrange for an arrestee's first

9

appearance. S*ee Kennedy v. Blankenship*, 100 F.3d 640, 643 (8th Cir. 1996) (finding failure to follow policy does not state a claim for relief under section 1983). Therefore, Sevier County is not liable for its alleged failure to train.

Finally, Plaintiff asserts an official capacity claim based on an alleged failure to supervise. The summary judgment record, however, contains no evidence of a custom, policy, or widespread practice of failing to supervise officers. A single incident that resulted in an outcome not satisfactory to the Plaintiff does not demonstrate that Sevier County had notice that its supervision was so lacking that it was likely to result in inmates being detained for extended periods of time without a prompt first appearance. *Parrish*, 594 F.3d at 999. In sum, the Court finds no basis for official capacity liability.

Accordingly, Sheriff Simmons is entitled to summary judgment on Plaintiff's official capacity claims.[4]

## CONCLUSION

For the above reasons, the Court **GRANTS** summary judgment in favor of Sheriff Simmons.[5] Accordingly, this case is **DISMISSED WITH PREJUDICE**. A judgment of even date shall issue.

**IT IS SO ORDERED**, this 30th day of July 2019.

/s/ Susan O. Hickey
Susan O. Hickey
Chief United States District Judge

---

[4] Because no constitutional violation occurred, the Court does not address the issue of qualified immunity. *Morris v. Lanpher*, 563 F.3d 399, 402 (8th Cir. 2009).
[5] The Court grants summary judgment *sua sponte* pursuant to Federal Rule of Civil Procedure 56(f)(1). As noted above, both parties were given notice and an opportunity to respond to the Court's finding that Plaintiff's claims could be resolved on summary judgment.